UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 17-cr-0301 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| Domonick Deshay Wright (1), | |
| Defendant. | |

This matter is before the Court on Defendant Domonick Deshay Wright's motion for compassionate release from custody pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 381.) Wright asks the Court to reduce his 120-month prison sentence to time-served and impose a term of supervised release that includes a home-confinement condition due to the dangers posed by COVID-19. Plaintiff United States of America opposes Wright's motion. For the reasons addressed below, Wright's motion is denied.

## BACKGROUND

Wright pleaded guilty to one count of conspiracy to possess firearms in furtherance of a drug-trafficking crime in February 2019. This Court sentenced Wright in October 2019 to 120 months' imprisonment. Wright currently is incarcerated at the Federal Correctional Institution in Oxford, Wisconsin (FCI Oxford), and is projected to be released on May 21, 2028.

Wright submitted a compassionate-release request to the Federal Bureau of Prisons (BOP), which the BOP denied on April 15, 2020. On July 24, 2020, Wright filed

a *pro se* motion for compassionate release with the Court. Wright argues that, in light of the ongoing COVID-19 pandemic, his health is at high risk because he "is severely obese and feels he has mild depression with [an] eating disorder." Wright also contends that compassionate release is warranted because he is a nonviolent offender who poses no danger to the community and he has demonstrated rehabilitation.

The Court appointed counsel on October 28, 2020, to represent Wright in connection with his compassionate-release motion. Thereafter, Wright's court-appointed counsel filed a supplemental memorandum in support of Wright's compassionate-release motion, which includes additional arguments and evidence that are consistent with Wright's *pro se* arguments and pertain to Wright's obesity and the current conditions at FCI Oxford. Wright seeks a reduction of his prison sentence to time-served and, if necessary, the imposition of a term of supervised release that includes a home-confinement condition. The United States opposes Johnson's motion.

## ANALYSIS

### I.     Legal Standard

A district court "may not modify a term of imprisonment once it has been imposed" except pursuant to specific statutory exceptions. 18 U.S.C. § 3582(c). The compassionate-release provision of the First Step Act is one such statutory exception. *See* 18 U.S.C. § 3582(c)(1)(A). Section 603(b) of the First Step Act amends 18 U.S.C. § 3582 and allows a defendant to petition a district court directly for compassionate

release.  First Step Act of 2018 (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).[1]

A district court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i), (ii).  A district court also must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A).  Congress has authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission's policy statement addressing sentence reductions under Section 3582(c)(1)(A) provides that a district court may reduce a defendant's term of imprisonment after considering Section 3553(a) factors if the court finds that (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) "the reduction is consistent with this policy statement." *U.S. Sentencing Guidelines Manual* (U.S.S.G.) § 1B1.13.  The Sentencing Commission defines "extraordinary and compelling reasons" to include (1) medical conditions that

---

[1] A defendant may move the district court for a sentence reduction only after first exhausting all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A). The record reflects, and the United States does not dispute, that Wright has satisfied this exhaustion requirement.

substantially diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration of physical or mental health, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. *Id.*, cmt. 1(A)–(D).

The burden rests with the defendant to show that he or she is entitled to a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). District courts consider three factors when evaluating a compassionate-release motion: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a sentence reduction is consistent with the Sentencing Commission's policy statement, including whether the prisoner is a danger to the safety of any other person or to the community; and (3) whether any sentencing factors articulated in 18 U.S.C. § 3553(a), to the extent they are applicable, weigh in favor of a sentence reduction. *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2, *5 (D. Minn. July 25, 2019); U.S.S.G. § 1B1.13.

## II.     Extraordinary and Compelling Reasons

Wright contends that his severe obesity, together with the ongoing COVID-19 pandemic and the current conditions at FCI Oxford, demonstrates extraordinary and compelling reasons that warrant a reduction in his sentence.[2] The United States disagrees.

---

[2] In his *pro se* motion, Wright also contends that he might suffer from mild depression and an eating disorder. But he neither substantiates these allegations with evidence nor demonstrates how these health conditions increase his susceptibility to

An inmate's medical conditions can, without more, prove sufficiently extraordinary and compelling to justify a sentence modification. *See* U.S.S.G. § 1B1.13 cmt. 1(A) (providing that extraordinary and compelling reasons may exist if the defendant's medical conditions are "serious and advanced . . . with an end of life trajectory" or are serious enough that they "substantially diminish[ ] the ability of the defendant to provide self-care" within the facility and "from which he or she is not expected to recover"). An inmate's serious medical condition "in combination with" additional reasons also may justify a sentence reduction. U.S.S.G. § 1B1.13 cmt. 1(D).

Courts that have considered compassionate-release motions in the context of the COVID-19 pandemic have required an inmate to demonstrate both a "particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases); *accord United States v. Reiter*, No. 18-37(2) (ADM), 2020 WL 6136124, at *2 (D. Minn. Oct. 19, 2020) (same). The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Court addresses, in turn, whether Wright has demonstrated a particularized susceptibility to COVID-19 and a particularized risk of contracting COVID-19 at FCI Oxford.

---

COVID-19. As such, the Court limits its analysis to Wright's arguments pertaining to obesity.

### A.     Particularized Susceptibility

Wright contends that he is particularly susceptible to COVID-19 because he is severely obese. The United States does not dispute that Wright is severely obese or that obesity is an increased risk factor for COVID-19.

According to the Centers for Disease Control and Prevention (CDC), adults of any age who have "certain underlying medical conditions are at increased risk for severe illness from the virus that causes COVID-19." CDC, *People with Certain Medical Conditions* (Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. These underlying medical conditions include "Obesity," defined by the CDC as a body mass index (BMI) of at least 30 but less than 40, and "Severe Obesity," defined as a BMI of 40 or higher. *Id.* Wright relies on BOP records confirming that, on January 8, 2020, Wright's BMI measured 40.3. The United States concedes that, although this measurement was taken nearly a year ago, there is no indication that Wright has lost weight since then. With a BMI of 40.3, Wright is at the low end of the CDC's "Class 3" category of obesity and, therefore, is considered severely obese.[3]

It is undisputed that Wright's severe obesity increases his risk of developing severe illness from COVID-19 if he were to become infected. But the Court must determine, not whether Wright is at an increased risk, but whether the nature and degree of that risk

---

[3]     The CDC divides obesity into three categories: Class 1 obesity (BMI of at least 30 but less than 35), Class 2 obesity (BMI of at least 35 but less than 40), and Class 3 or "severe" obesity (BMI of 40 or higher). *See United States v. Scott*, No. 3:03-cr-343-J-32PDB, 2020 WL 6152640, at *1 n.3 (M.D. Fla. Oct. 20, 2020) (citing CDC, *Defining Adult Overweight and Obesity*, https://www.cdc.gov/obesity/adult/defining.html).

6

is sufficiently extraordinary and compelling to warrant release from prison. Although some district courts have concluded that obesity is an extraordinary and compelling reason that warrants release during the COVID-19 pandemic, other district courts have concluded that it is not. *See, e.g.*, *United States v. Campanella*, No. 18-cr-00328-PAB-12, 2020 WL 4754041, at *3 (D. Colo. Aug. 17, 2020) (collecting cases). Courts also have recognized that the COVID-19 risks associated with obesity increase based on the severity of an individual's obesity. *See, e.g.*, *United States v. Perkins*, No. 14-cr-104-LM-1, 2020 WL 4783558, at *4 (D.N.H. Aug. 18, 2020) (citing recent scientific studies and observing that "the higher a person's BMI is, the greater the risk that COVID-19 will prove fatal for that person"). And "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." CDC, *People with Certain Medical Conditions* (Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Courts in this District repeatedly have concluded that obesity is not necessarily sufficient to demonstrate an extraordinary and compelling reason that would warrant a sentencing reduction. *See, e.g.*, *United States v. Garcia*, No. 10-275 (02) (MJD), 2020 WL 5500455, at *2 (D. Minn. Sept. 11, 2020) (concluding that 51-year-old defendant's obesity did not demonstrate extraordinary and compelling reasons); *United States v. Smith*, No. 16-169 (04) (MJD), 2020 WL 5424858, at *1 (D. Minn. Sept. 10, 2020) (concluding that 48-year-old defendant's obesity and diabetes did not demonstrate extraordinary and compelling reasons); *United States v. Hennessey*, No. 18-304 (JRT/KMM), 2020 WL 4209020, at *1 (D. Minn. July 22, 2020) (concluding that 57-

7

year-old defendant's obesity did not demonstrate extraordinary and compelling reasons); *United States v. Edison*, No. 12-225 (DWF) 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (concluding that 47-year-old defendant's BMI of 35.4 "fails to meet the demanding standard for compassionate release"). As recently as October 2020, a court in this District denied a motion for compassionate release involving an inmate at FCI Oxford who suffers from both obesity *and* asthma. *United States v. Capehart*, No. 14-344-4 (JRT/TNL), 2020 WL 6119998, at *2 (D. Minn. Oct. 16, 2020). In that case, the court recognized that the defendant's medical conditions put him at an increased risk. *Id.* But the court also observed that obese inmates can reduce those risks by following CDC recommendations to "continue to take medications for underlying conditions, maintain social distancing precautions, follow their health plans, and remain in contact with healthcare providers if they develop symptoms." *Id.*

By contrast, when courts in this District have concluded that extraordinary and compelling reasons exist, the defendants in those cases often have demonstrated the existence of COVID-19 risk factors that are substantially more severe than those established here by Wright. *See, e.g.*, *United States v. McElrath*, No. 3-cr-235 (JNE) (1), 2020 WL 5423067, at *2 (D. Minn. Sept. 10, 2020) (concluding that 58-year-old defendant demonstrated extraordinary and compelling reasons based on obesity together with eight other "serious physical or medical condition[s]"); *United States v. Bennett*, No. 15-260(10) (PAM/TNL), 2020 WL 3638696, at *1 (D. Minn. July 6, 2020) (concluding that 56-year-old defendant demonstrated extraordinary and compelling reasons based on

8

a BMI "approaching 40" combined with Type 2 diabetes, high blood pressure, hyperlipidemia, and hyperthyroidism).

Because COVID-19 poses a general threat to every non-immune person, the general risks arising from the existence of the COVID-19 pandemic cannot, without more, provide a basis for a sentence reduction. *See Raia*, 954 F.3d at 597. Wright's severe obesity unquestionably puts him at a higher risk than some segments of the population. However, his BMI of 40.3 is only slightly above the threshold to be considered severe. Moreover, he is otherwise healthy, presenting no evidence of other medical conditions that the CDC has identified as risk factors relevant to COVID-19. And he is 32 years old, which is far below the five highest-risk age categories as defined by the CDC. *See* CDC, *Older Adults* (Dec. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (observing that "the risk for severe illness with COVID-19 increases with age," the "greatest risk for severe illness from COVID-19 is among those aged 85 or older," and "people in their 50s are at higher risk for severe illness than people in their 40s," whereas "people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s"). Without more, Wright's obesity is insufficient to demonstrate the extraordinary and compelling reasons necessary to warrant reducing his sentence.

### B. Particularized Risk at FCI Oxford

Wright also contends that he has a particularized risk of contracting COVID-19 at FCI Oxford, arguing that a recent outbreak of COVID-19 at that facility demonstrates this particularized risk.

9

Courts in this District have denied motions for compassionate release when the evidence demonstrates that the BOP facility at issue has instituted COVID-19 policies to keep prisoners reasonably safe, the BOP facility has been successful at preventing the spread of the virus, and the defendant's ability to provide self-care is not substantially diminished. *See, e.g.*, *United States v. McKee*, No. 18-219 (PAM), 2020 WL 5269969, at *2 (D. Minn. Sept. 4, 2020) (denying motion for compassionate release despite defendant's serious medical conditions, including obesity, when 84 inmates had tested positive for COVID-19 and three had died, but the BOP facility had implemented COVID-19 policies such that "cases appear to be remaining stable or improving"); *United States v. Bledsoe*, No. 19-cr-00036 (SRN/HB), 2020 WL 4559424, at *4 (D. Minn. Aug. 7, 2020) (denying motion for compassionate release despite defendant's diabetes, obesity, and hypertension because BOP facility appeared to have been "largely successful at stopping the spread of the virus").

It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities. These measures include limiting social visits, legal visits and inmate facility transfers; requiring enhanced staff health screening and temperature checks; implementing coronavirus-specific protocols, such as screening new inmates, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors; and modifying operations to maximize social distancing and limit group gatherings. *See* BOP, *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Dec. 14, 2020). In addition, FCI Oxford has implemented more specific procedures.

These procedures include limiting social visits, prohibiting physical contact during visits, cleaning and disinfecting visiting rooms between visits, and requiring the use of face coverings and social distancing.  *See* FCI Oxford, *COVID-19 Visiting Procedures*, https://www.bop.gov/locations/institutions/oxf/OXF_visiting_procedures_covid19_2020 1203.pdf (last visited Dec. 14, 2020).  And FCI Oxford's website currently indicates that the facility has suspended *all* visiting until further notice—presumably in response to the recent increase in COVID-19 infections at that facility.

Several district courts recently have denied motions for compassionate release involving FCI Oxford, citing indications that FCI Oxford has demonstrated its ability to effectively protect inmates against the spread of COVID-19.  *See, e.g.*, *United States v. Villasenor*, No. 03 CR 0689(-02), 2020 WL 7129368, at *5 (N.D. Ill. Dec. 4, 2020) (observing that historical data "shows steep growth in coronavirus cases at FCI-Oxford in October and November 2020 followed by what appears to be improvement in active cases"); *United States v. Lawson*, No. 1:13-CR-4-HAB, 2020 WL 6867175, at *4 (N.D. Ind. Nov. 23, 2020) (rejecting defendant's argument that BOP's COVID-19 mitigation and safety efforts at FCI Oxford are insufficient); *United States v. Walker*, No. 13-cr-30042-001, 2020 WL 6363841, at *2 (C.D. Ill. Oct. 29, 2020) (observing that, although FCI Oxford was reporting 67 inmates and 15 staff members infected with COVID-19, "the facility has made strides in combating the disease as 526 inmates and 29 staff members have recovered from . . . COVID-19").  These conclusions are consistent with publicly available information and the record evidence in this case as to the efforts of the BOP and FCI Oxford.

11

Although Wright does not dispute that FCI Oxford has implemented protocols to address the COVID-19 risks, he contends that these protocols are inadequate to protect him. Wright contends that the protocols FCI Oxford has implemented "do not mitigate against the risk for asymptomatic carriers, or for those who express some symptoms, but not fever." This observation may be true. But Wright's arguments demonstrate only that FCI Oxford's procedures are not perfect, not that FCI Oxford's procedures are reckless, unreasonable, unsuccessful, or otherwise deficient. Wright does not identify any particular COVID-19 safety measure in place at FCI Oxford that is improper, unreasonable, or not being followed by prison staff, nor does he identify any additional safety measures that reasonably could be implemented but have not been.

Rather than identifying any flaws in FCI Oxford's COVID-19 safety protocols, Wright relies solely on the recent prevalence of COVID-19 infections at FCI Oxford. It is undisputed that an increase in COVID-19 infections at FCI Oxford has occurred in recent weeks. When Wright filed his supplemental memorandum of law on November 6, 2020, the BOP reported that FCI Oxford had nine active cases of COVID-19 among inmates and nine active cases of COVID-19 among prison staff. Those numbers remained nearly unchanged when the United States filed its response memorandum of law on December 2, 2020. Currently, however, the BOP reports 145 active cases of COVID-19 among inmates at FCI Oxford and five active cases of COVID-19 among prison staff at FCI Oxford. *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Bowman*, No. 08-CR-10086, 2020 WL 5569584, at *2 (C.D. Ill. Sept. 17, 2020) (internal quotation marks omitted). "Rather, a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* (internal quotation marks omitted). Here, Wright has shown that his particular institution is facing a serious outbreak of COVID-19 infections, with active cases among inmates increasing from 10 to 145 within the span of a week.

Wright has not shown, however, that the recent outbreak at FCI Oxford demonstrates that FCI Oxford is unable to successfully contain the outbreak. Recent data from FCI Oxford is instructive. Notably, although FCI Oxford reported 67 active COVID-19 infections among inmates on October 29, *see Walker*, 2020 WL 6363841 at *2, that number had decreased to 9 active cases by November 6 according to Wright's supplemental memorandum of law, and that number further decreased to 1 active case by November 23, *see Lawson*, 2020 WL 6867175, at *3. In addition, the BOP reports that FCI Oxford has had zero COVID-19 deaths among inmates or staff and that 592 inmates and 66 prison staff members at FCI Oxford have recovered from COVID-19 since the beginning of the pandemic. *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). Moreover, Wright has

presented no particularized evidence that any inmate at FCI Oxford has required hospitalization or experienced severe illness attributable to COVID-19. These factors, viewed together, demonstrate that FCI Oxford has been successful at containing sudden outbreaks and keeping inmates reasonably safe.

Wright also has not demonstrated that "his health condition places him at *significant* risk of complications should he contract the virus." *Bowman*, 2020 WL 5569584, at *2 (emphasis added) (internal quotation marks omitted). Instead, for the reasons addressed above in Part II.A. of this Order, Wright has demonstrated only that he is at an increased risk compared to some segments of the population. Wright's obesity, without more, does not establish a sufficiently significant risk of developing complications such that a sentencing reduction is warranted.

The Court is mindful of the seriousness of COVID-19 and is in no way attempting to minimize the risks and concerns that Wright has identified. Nor is the Court downplaying Wright's efforts at rehabilitation, which are commendable. However, Wright has not met his burden to establish that extraordinary and compelling reasons warrant his release because he has not shown either a particularized susceptibility to COVID-19 or a particularized risk of contracting COVID-19 at FCI Oxford.[4] In light of these conclusions, the Court need not address whether Wright is a danger to the safety of any other person or to the community.

---

[4] Moreover, the Court considered the Section 3553(a) factors when it sentenced Wright approximately fourteen months ago. *See* 18 U.S.C. § 3553(a). Wright has not identified a change in circumstances relevant to any aspect of those factors that would alter the Court's determination that the sentence imposed is sufficient but not greater than necessary to fulfill the statutory sentencing purposes. *See id.*

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Domonick Deshay Wright's motion for compassionate release from custody, (Dkt. 381), is **DENIED**.

Dated:  December 14, 2020                              s/Wilhelmina M. Wright
                                                                                   Wilhelmina M. Wright
                                                                                   United States District Judge