UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,                     Case No. 17-cr-0301 (WMW/DTS)

        Plaintiff,
                                          **ORDER**

v.

Domonick Deshay Wright (1),

        Defendant.

---

This matter is before the Court on Defendant Domonick Deshay Wright's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Dkt. 371.) Plaintiff United States of America opposes the motion. For the reasons addressed below, Wright's motion is denied.

## BACKGROUND

The United States charged Wright by indictment with multiple drug and firearms-related offenses in November 2017. The Court appointed attorney F. Clayton Tyler to represent Wright, and Tyler filed nine pretrial motions on Wright's behalf in January 2018. After granting in part and denying in part Wright's non-dispositive motions, the magistrate judge issued a Report and Recommendation (R&R) that recommended denying Wright's two dispositive motions—namely, his motion to suppress evidence and motion to sever his trial from that of his co-defendants. Tyler filed objections to the R&R on Wright's behalf. This Court overruled Wright's objections and adopted the R&R.

At a February 7, 2019 change-of-plea hearing, the Court followed its standard practice by advising Wright of his rights, including the right to file pretrial motions. Wright acknowledged under oath that he understood these rights and that he knowingly, intelligently, and voluntarily waived these rights. Wright also stated under oath that he had told Tyler everything that he wanted his counsel to know about the case. Thereafter, Wright pleaded guilty to one count of conspiracy to possess firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(o).

The Court held a sentencing hearing on October 16, 2019. Wright and Tyler were present at the sentencing hearing. The Court sentenced Wright to 120 months' imprisonment. Following its standard practice, the Court advised Wright at the end of the sentencing hearing of his right to appeal and the deadline to do so. Wright did not appeal his conviction or sentence.

On May 22, 2020, Wright filed the pending motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Wright argues that this Court lacked subject-matter jurisdiction over this case because the State of Minnesota had criminally charged Wright before the United States commenced this case. Wright also contends that his conviction is unconstitutional in light of the holding by the Supreme Court of the United States in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), which invalidated 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague. In addition, Wright argues that he received ineffective assistance of counsel because Tyler failed to adequately investigate

and litigate Wright's motion to suppress evidence and failed to file an appeal of Wright's conviction and sentence. The United States opposes Wright's motion.

## ANALYSIS

A federal prisoner may move to vacate a conviction or sentence "for jurisdictional and constitutional errors" or fundamental errors of law that inherently result in "a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotation marks omitted). A defendant seeking relief "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). A *pro se* litigant's filings are liberally construed and held to less stringent standards than filings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But it is the defendant's burden to establish that Section 2255 relief is warranted. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004); *Cassidy v. United States*, 428 F.2d 585, 587 (8th Cir. 1970). The Court addresses, in turn, each argument that Wright advances in support of his motion to vacate his conviction and sentence.

### I.     Subject-Matter Jurisdiction

Wright first argues that this Court lacked subject-matter jurisdiction over this case because the State of Minnesota had criminally charged Wright before the United States commenced this case.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put

3

in jeopardy of life or limb." U.S. Const. amend. V. But under the dual-sovereignty doctrine, "although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution." *United States v. Leathers*, 354 F.3d 955, 959–60 (8th Cir. 2004) (quoting *United States v. Johnson*, 169 F.3d 1092, 1096 (8th Cir. 1999)). For the purpose of the Double Jeopardy Clause and the dual-sovereignty doctrine, the state of Minnesota and the United States are separate sovereigns. *See id.* at 960.

In seeking to avoid the dual-sovereignty doctrine, Wright relies on *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922), and *Ponzi v. Fessenden*, 258 U.S. 254 (1922). But Wright misinterprets these decisions, neither of which is applicable here. In *Kline*, which involved an alleged breach of contract, the Supreme Court addressed the conflicting exercise of jurisdiction by multiple courts over the same subject matter in the civil context. *See* 260 U.S. at 227, 229–31. And in *Ponzi*, the Supreme Court held that the federal government may choose to deliver a federal prisoner for trial on state charges. *See* 258 U.S. at 261–62. In doing so, the Supreme Court observed that a defendant who is "accused of [a] crime . . . may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." *Id.* at 260. As such, a criminal defendant "has no standing to assert [a state's] interest in asserting jurisdiction," and if an individual "has violated the law of both sovereigns, he is subject to prosecution by both and he may not complain of or choose the manner or order in which each sovereign proceeds against

him." *United States v. Jackson*, 327 F.3d 273, 302 (4th Cir. 2003) (internal quotation marks omitted). For these reasons, Wright's reliance on *Kline* and *Ponzi* is misplaced.

In his reply brief, Wright invokes an exception to the dual-sovereignty doctrine, arguing that a prosecution by one sovereign cannot be used as a "tool" by another sovereign's authorities. It is true that a "state prosecution that is merely a sham and a cover for a federal prosecution" may violate the Double Jeopardy Clause. *Johnson*, 169 F.3d at 1096 (quoting *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959)). But the United States Court of Appeals for the Eighth Circuit has "never explicitly held that the *Bartkus* [sham] exception applies" when the federal prosecution occurs *after* the state prosecution. *Leathers*, 354 F.3d at 960 (citing *United States v. Basile*, 109 F.3d 1304, 1307 (8th Cir. 1997)). Here, Wright's federal prosecution occurred after his state prosecution had commenced, and the state prosecutor dismissed the state charges against Wright before Wright's federal prosecution concluded. Therefore, the "sham" exception addressed in *Bartkus* is inapplicable.

Even if the sham exception were applicable to a federal prosecution that occurred after a state prosecution, Wright has not established that his federal prosecution was a "sham and cover" for his state prosecution. *Id.* "Referrals and cooperation between federal and state officials not only do not offend the Constitution," they "are commonplace and welcome." *Id.* (citing *Bartkus*, 359 U.S. at 123). A state prosecutor's referral does not undermine the independence of federal prosecutors, "regardless of the state prosecutor's motives in making the referral." *Id.* Indeed, cooperation between

federal and state law enforcement authorities "is not out of the ordinary." *Chavez v. Weber*, 497 F.3d 796, 804 (8th Cir. 2007) (citing *Leathers*, 354 F.3d at 960). Moreover, prosecuting a federal crime in federal court that previously "has been prosecuted as a state crime in a state court does not itself violate due process," even when the defendant is subject to a harsher sentence in federal court than in the prior state court proceeding.[1] *United States v. Turpin*, 920 F.2d 1377, 1388 (8th Cir. 1990). As such, the fact that Wright faced charges involving the same conduct in both state court and federal court is not a basis for vacating his federal conviction or sentence.[2]

For these reasons, Wright's motion to vacate his conviction and sentence based on this Court's alleged lack of subject-matter jurisdiction is denied.

## II.     Applicability of *United States v. Davis*

Wright next argues that his conviction is unconstitutional in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague. The United States counters that

---

[1]     A sham prosecution may occur if, regardless of motive, "the state has effectively manipulated the actions of the federal government, so that the federal officials retained little or no independent volition." *Leathers*, 354 F.3d at 960 (internal quotation marks omitted). But even accepting Wright's allegations as true, nothing in Wright's motion or the record in this case plausibly suggests that any such manipulation occurred here.

[2]     On June 1, 2021, Wright filed a *pro se* "Motion for Summary Judgment," presenting additional arguments as to subject-matter jurisdiction. Even if Wright's June 1, 2021 filing were procedurally proper, his supplemental arguments as to jurisdiction are unavailing for the same reasons addressed above.

6

the holding in *Davis* is inapplicable to Wright's conviction because Wright's conviction does not implicate Section 924(c)(3)(B).[3]

Wright was convicted of conspiring to possess firearms in furtherance of a drug-trafficking crime, a violation of 18 U.S.C. § 924(o), which applies to a "person who conspires to commit an offense under [Section 924(c)]." A person violates Section 924(c) if that person, "during and in relation to any crime of violence or drug trafficking crime . . . , in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A).

In *Davis*, the Supreme Court addressed the constitutionality of Section 924(c)(3)(B), which defines "crime of violence" to include a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). The Supreme Court held that this language is unconstitutionally vague. *Davis*, 139 S. Ct. at 2336.

According to Wright, the *Davis* holding renders his conviction unconstitutional. But the *Davis* holding is limited to the statutory definition of "crime of violence." Wright

---

[3] Wright contends that the United States should be judicially estopped from making this argument because the United States allegedly made an inconsistent argument as to this issue in an unrelated criminal case. "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions *in the same or related litigation*." *United States v. Morse*, 613 F.3d 787, 792 (8th Cir. 2010) (emphasis added) (internal quotation marks omitted). And courts typically "have not used estoppel to bar a criminal prosecution." *Id.* Thus, Wright cannot invoke judicial estoppel based on an unrelated criminal case to support his motion to vacate his conviction or sentence in this case. Moreover, Wright has not established that the United States has taken inconsistent positions as to this issue.

was not convicted of conspiring to possess a firearm in furtherance of a *crime of violence*, which is defined in Section 924(c)(3)(B). Rather, he was convicted of conspiring to possess a firearm in furtherance of a *drug-trafficking crime*, which is defined in Section 924(c)(2). Specifically, when Wright pleaded guilty, he admitted under oath that he and others "agreed to possess firearms in furtherance of a conspiracy to distribute heroin and cocaine." Because Wright's conviction is not predicated on the statutory definition of "crime of violence," the holding in *Davis* does not apply to Wright's offense of conviction.

For these reasons, the holding in *Davis* does not render Wright's conviction unconstitutional. Therefore, Wright's Section 2255 motion to vacate his conviction and sentence on this basis is denied.

### III. Ineffective Assistance of Counsel

Wright also argues that his defense attorney provided ineffective assistance. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. When evaluating the reasonableness of defense counsel's conduct, courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Counsel's "strategic choices" executed

after a thorough investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 690.

Wright contends that he received ineffective assistance of counsel from Tyler on two grounds: Tyler failed to adequately investigate and litigate Wright's motion to suppress evidence, and Tyler failed to file an appeal of Wright's conviction and sentence. The Court addresses each allegation in turn.

### A. Motion to Suppress

Wright first asserts that Tyler provided ineffective assistance by failing to adequately investigate and litigate Wright's motion to suppress evidence. Specifically, Wright disputes the sufficiency of Tyler's representation with respect to video evidence that law enforcement lost.

Defense counsel must "make a reasonable investigation in the preparation of a case or make a reasonable decision not to conduct a particular investigation." *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) (citing *Strickland*, 466 U.S. at 691). As such, "counsel must exercise reasonable diligence to produce exculpatory evidence and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Id.* However, to demonstrate the requisite "prejudice" necessary to invalidate a guilty plea based on ineffective assistance of counsel, a defendant must "show that there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on

9

going to trial." *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114, 1130 (N.D. Iowa 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

Here, the record reflects that a dashcam recorded the traffic stop that precipitated Wright's arrest, but law enforcement lost this video recording due to a computer malfunction. Wright contends that Tyler failed to sufficiently investigate this issue. According to Wright, Tyler should have investigated law enforcement's obligation to preserve the video under Minnesota law. In addition, Wright contends that Tyler should have obtained the services of an information technology expert to either recover the video recording or establish that law enforcement intentionally destroyed the video recording to eliminate exculpatory evidence.

Tyler filed nine pretrial motions on behalf of Wright, including a motion to suppress evidence that law enforcement officers obtained during or after the traffic stop. In support of the motion to suppress, Tyler argued that law enforcement officers improperly expanded the scope of the traffic stop by ordering Wright to exit the vehicle and by performing a dog-sniff search. The magistrate judge disagreed, finding that the evidence established that law enforcement officers had reasonable suspicion of criminal drug activity to support the dog-sniff search. The magistrate judge also found that law enforcement officers had probable cause to arrest Wright and search both Wright and the vehicle. Tyler objected to these findings, and this Court overruled the objections and adopted the magistrate judge's findings and recommendations. Evidentiary hearings occurred in both the state-court proceedings and the federal-court proceedings, during

which sworn testimony established that dashcam video of the traffic stop did not exist due to a computer malfunction.

Subsequently, at Wright's change-of-plea hearing, the Court advised Wright of his rights, including his right to file pretrial motions. Specifically, the Court advised Wright that, "if you plead guilty, you'll give up your right to file any motions before trial, such as motions asking me to rule that certain evidence can't be used against you." Wright acknowledged under oath that he understood these rights and that he knowingly, intelligently, and voluntarily waived these rights. In addition, Wright specifically acknowledged that, by pleading guilty, he would be waiving his right to appeal the denial of his suppression motion. Wright cannot challenge his conviction on the grounds that his counsel failed to adequately investigate and litigate pretrial motions that Wright expressly waived his right to pursue.

Even if Wright had not waived his right to pursue pretrial motions, to prevail on his ineffective-assistance claim he must show that his counsel's performance did not meet an objective standard of reasonableness *and* that counsel's errors prejudiced Wright. *See Strickland*, 466 U.S. at 687. Wright has made neither showing here. The record reflects that Tyler moved to suppress evidence on multiple grounds and objected to the magistrate judge's findings and recommendations pertaining to the traffic stop. At multiple evidentiary hearings, sworn testimony established that dashcam video of the traffic stop did not exist due to a computer malfunction. Nonetheless, the two officers involved in the traffic stop testified, and Tyler cross-examined both officers as to the circumstances

of the traffic stop. Nothing in the record or in Wright's allegations reasonably suggests that the dashcam video was recoverable, intentionally destroyed, or contained exculpatory evidence.[4] As such, Wright has not demonstrated that Tyler's investigation lacked reasonable diligence. Moreover, Wright has not shown a reasonable probability that, had Tyler more thoroughly investigated the lost dashcam video, Wright "would not have pleaded guilty and would have insisted on going to trial." *Marcos-Quiroga*, 478 F. Supp. 2d at 1140 (quoting *Hill*, 474 U.S. at 59). Therefore, Wright has not established either that his counsel's performance failed to meet an objective standard of reasonableness or that his counsel's alleged errors prejudiced Wright.[5]

For all these reasons, Wright has not demonstrated that he received ineffective assistance of counsel on this basis.

B.     **Failure to File an Appeal**

Wright also contends that Tyler was ineffective because he failed to file an appeal of Wright's conviction or sentence as requested. Specifically, Wright alleges that he

---

[4]     Notably, the Court's denial of Wright's motion to suppress evidence primarily relied on observations that law enforcement officers made either prior to the traffic stop or when they were in close contact with Wright during the traffic stop—observations that would not have been discernable on a dashcam video. Thus, even if the video had been recoverable, it is unlikely that the video would have materially impacted Wright's defense.

[5]     On May 17, 2021, Wright filed a *pro se* motion to amend his Section 2255 motion to assert additional arguments pertaining to this issue, including Wright's contention that Tyler should have obtained an audit of the data pertaining to the lost dashcam video. Wright also seeks an opportunity to obtain discovery on this issue. Wright's amended arguments are unavailing for the same reasons addressed above, and Wright has not established that discovery as to this issue is warranted.

directed Tyler to file an appeal on two bases: the suppression issue and the Supreme Court's *Davis* decision, both of which are addressed above. It is undisputed that no appeal was filed.

When "a defendant has *expressly requested* an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) (emphasis added); *accord Witthar v. United States*, 793 F.3d 920, 922 (8th Cir. 2015) ("An attorney's failure to file a *requested* appeal automatically satisfies the deficient-performance prong of *Strickland* because it is professionally unreasonable." (emphasis added) (internal quotation marks omitted)). Accordingly, if the evidence shows that a defendant "asked counsel to appeal and counsel refused," the defendant is entitled to relief under Section 2255. *Witthar*, 793 F.3d at 923. In addition, defense counsel "has a constitutionally imposed duty to *consult with* the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (emphasis added).

Here, it is undisputed that Wright expressed an interest in appealing, after which Tyler consulted with Wright. In an affidavit filed by the United States, Tyler attests:

> Immediately following sentencing I did discuss his appellate rights with Mr. Wright. He informed me that he did not want to appeal.
>
> . . . Mr. Wright did contact me about appealing prior to the deadline. Specifically, he said that he wanted to appeal the

> denial of his motion to suppress. My associate and I discussed his appellate rights with him. We reminded Mr. Wright that he waived his right to challenge that order when he pled guilty. I told him I would file the appeal if he directed me to.

Wright does not dispute Tyler's account of these events. To the contrary, Wright similarly contends that Tyler "attempt[ed] along with someone at his office to convince me that there were not any meritorious issues for appeal." As such, Tyler undisputedly satisfied his duty to consult with Wright. *Id.*

Because Tyler fulfilled his duty to consult with Wright about appealing his conviction, Tyler's subsequent performance is professionally unreasonable only if he failed to follow Wright's "express instructions" to file an appeal. *Id.* at 478; *see also United States v. Keys*, 469 F. Supp. 2d 742, 750–51 (D. Minn. 2007) (denying postconviction relief when defendant had not expressly instructed counsel to file an appeal). According to Tyler, after discussing Wright's appellate rights with him, Wright "told us that since the issue had been waived, he did not want to file an appeal." After this conversation, but before the deadline to file an appeal had passed, Tyler mailed a letter to Wright memorializing this conversation. A copy of this letter is included with Tyler's affidavit. Tyler attests that, thereafter, "Mr. Wright did contact me about extending his self-surrender date" but "never directed me to file an appeal."

According to Wright, despite Tyler's attempts to convince him that an appeal would not be meritorious, Wright "never articulated to counsel not to appeal" and that, notwithstanding counsel's advice, Wright "never told counsel not to file the notice [of

appeal], necessitating counsel's obligation to file the notice." Wright also maintains that "against my express wishes counsel did not file the notice."

A district court may hold an evidentiary hearing on a Section 2255 motion to resolve disputed material facts. *See* 28 U.S.C. § 2255(b). And a district court *must* conduct an evidentiary hearing if neither the defendant's statement nor counsel's statement is "facially incredible and both contain similar specificity" about the disputed issue. *Witthar*, 793 F.3d at 923–24 (internal quotation marks omitted). But an evidentiary hearing is *not* required if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003).

Here, even accepting Wright's allegations as true, he has not established that he gave Tyler "express instructions" to file an appeal, as is required to demonstrate ineffective assistance. *Roe*, 528 U.S. at 478. Although Wright maintains that he "never told" Tyler *not* to file an appeal, Wright's silence cannot impose an obligation on Tyler to file an appeal if Wright did not expressly instruct Tyler to do so. *See id.* Wright also alleges that he "specifically directed his attorney to file a notice of appeal" and that Tyler acted "against my express wishes." But Wright provides no factual detail to support this allegation. For instance, Wright does not articulate when or how he expressed his desire to appeal. In contrast, Tyler's affidavit provides detail about when and how he discussed Wright's appellate rights, including a contemporaneously drafted letter memorializing

one of these discussions and Wright's decision not to appeal, which Tyler mailed to Wright before the appeal deadline had passed. Moreover, Tyler's affidavit is consistent with the record in this case, including Tyler's reminders to Wright that Wright had waived his right to appeal certain issues that Wright wished to challenge. Based on this record, the Court concludes that Wright's vague assertion that he "specifically directed" Tyler to file an appeal lacks detail as to the manner, means, and date of doing so, is inherently incredible in light of the record in this case, and is contradicted by other more specific evidence in the record. As such, an evidentiary hearing is not warranted.

For all these reasons, Wright has not demonstrated that he received ineffective assistance of counsel. Accordingly, Wright's motion to vacate his conviction and sentence on this basis is denied.

## IV. Certificate of Appealability

When a final order is issued in a Section 2255 proceeding, a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons addressed above, the Court concludes that Wright has not made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability shall issue.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,
**IT IS HEREBY ORDERED**:

1. Defendant Domonick Deshay Wright's motion to amend, (Dkt. 407), is **GRANTED**.

2. Defendant Domonick Deshay Wright's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, (Dkt. 371), is **DENIED**.

3. Defendant Domonick Deshay Wright's motion for discovery, (Dkt. 408), is **DENIED**.

4. Defendant Domonick Deshay Wright's motion for summary judgment, (Dkt. 409), is **DENIED**.

5. No certificate of appealability shall issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 18, 2021                      s/Wilhelmina M. Wright
                                                   Wilhelmina M. Wright
                                                   United States District Judge